# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: October 27, 2025

| | | |
|---|---|---|
| \* \* \* \* \* \* \* \* \* \* \* \* \* | \* | |
| MARIA BETTINGER, | \* | UNPUBLISHED |
| | \* | |
| Petitioner, | \* | No. 23-1478V |
| | \* | |
| v. | \* | Special Master Dorsey |
| | \* | |
| SECRETARY OF HEALTH | \* | Interim Attorneys' Fees and Costs. |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |
| \* \* \* \* \* \* \* \* \* \* \* \* \* | \* | |

<u>Sean Franks Greenwood</u>, The Greenwood Law Firm, Houston, TX, for Petitioner.
<u>Naseem Kourosh</u>, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On August 28, 2023, Maria Bettinger ("Petitioner") filed a petition in the National Vaccine Injury Program[2] alleging that an influenza ("flu") vaccine she received on September 18, 2020 caused her to suffer chronic inflammatory demyelinating polyneuropathy ("CIDP"). Petition at Preamble (ECF No. 1).

On March 28, 2025, Petitioner filed a motion for interim attorneys' fees and costs, requesting compensation for the attorney who worked on her case and reimbursement of costs.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, the undersigned is required post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018) ("Vaccine Act" or "the Act"). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

Petitioner's Application for Interim Award of Attorneys' Fees and Expenses ("Pet. Mot."), filed Mar. 28, 2025 (ECF No. 63). Petitioner's request can be summarized as follows:

**Attorneys' Fees** – $20,346.00
**Attorneys' Costs** – $46,450.87

Petitioner thus requests a total of $66,796.87. Respondent filed a response on April 11, 2025, stating that "Respondent defers to the Special Master to determine whether or not [P]etitioner has met the legal standard for an interim fees and costs award." Respondent's Response to Pet. Mot. ("Resp. Response"), filed Apr. 11, 2025, at 2 (ECF No. 64). Respondent further requests the undersigned exercise her "discretion to determine a reasonable award for attorney's fees and costs, and that [she] scrutinize . . . specific requests" made by Petitioner. Id. at 5. Petitioner filed a reply responding to Respondent's contentions and reiterating her request for interim attorneys' fees and costs. Pet. Reply to Resp. Response ("Pet. Reply"), filed Apr. 17, 2025, at 2 (ECF No. 65).

This matter is now ripe for adjudication. For the reasons discussed below, the undersigned **GRANTS IN PART** Petitioner's motion and awards $45,756.49 in attorneys' fees and costs.

## I.    PARTIES CONTENTIONS

### A.    Respondent's Contentions

Respondent identifies several requests in Petitioner's application for interim attorneys' fees and costs that Respondent contends warrant scrutiny. Resp. Response at 5. First, Respondent asserts that "[P]etitioner's overall fee request appears high" for a case "which has not involved a hearing and that has been pending for less than two years." Id. In support, Respondent cites to two cases where Mr. Greenwood was awarded interim fees. Id. (citing Torres v. Sec'y of Health & Hum. Servs., No. 21-1356V, 2023 WL 9177302 (Fed. Cl. Spec. Mstr. Spec. Mstr. Dec. 19, 2023) and Alqulissi v. Sec'y of Health & Hum. Servs., No. 22-1511V, 2024 WL 5320024 (Fed. Cl. Spec. Mstr. Dec. 18, 2024)). In both Torres and Alqulissi, the case had been pending for less than two years and not involved a hearing when interim fees were awarded. Id. Mr. Greenwood was awarded approximately $36,000.00 and $25,000.00 respectively. Id. In the present case, Mr. Greenwood is requesting approximately $67,000.00. Id. Respondent acknowledges that the majority of Petitioner's request is comprised of expert costs. Id. at 6.

Next, Respondent contends that Dr. Omid Akbari's requested $550.00 hourly rate is excessive and notes several special masters have declined to award this rate. Resp. Response at 6., 6 fn.2 (listing 12 cases decided between 2021 and 2025 reducing Dr. Akbari's rate from $550.00 to $500.00 per hour). Respondent further notes that his experts are paid an hourly rate of $375.00 and contends that this is "direct evidence of a rate that experts in all medical specialties have accepted for Vaccine Program cases." Id. at 5.

Finally, Respondent contends "number of hours billed by Dr. Akbari may be excessive." Resp. Response at 7. Respondent identifies several cases where special masters have expressed concerns regarding the number of hours billed by Dr. Akbari. Id. at 7-8. Respondent notes that Dr. Akbari spent 42.5 hours on his first report and 25.6 hours on his second report. Id. at 8. And Respondent contends that "significant portions of the text of Dr. Akbari's first report in this case were directly copied and pasted from various outside sources without citation or attribution." Id. at 8-9; see also Resp. Response, Appendix ("App.") (detailing portions of Dr. Akbari's report copied from medical literature without attribution). Next, Respondent notes that Dr. Akbari's first report "appears duplicated nearly verbatim from his first report in Nieves." Resp. Response at 9 (citing Nieves v. Sec'y of Health & Hum. Servs., No. 18-1602V, 2023 WL 7131801 (Fed. Cl. Spec. Mstr. Oct. 2, 2023)). Respondent contends that the duplicative nature of Dr. Akbari's first report "calls into question the reasonableness of Dr. Akbari's billing 42.5 hours for drafting his first report." Id. at 9-10.

### B.    Petitioner's Reply

Replying to Respondent's contentions, Petitioner first notes that Respondent has not identified "any particular time entry Mr. Greenwood or his staff charged or produce[d] any reason any time entry was neither reasonable nor necessary." Pet. Reply at 3.

Turning to Dr. Akbari, Petitioner also notes that Respondent did not identify specific time entries in Dr. Akbari's invoice as unreasonable or unnecessary. Pet. Reply at 2. Petitioner also argues that Respondent did not "produce any evidence or argument that Dr. Akbari did not spend the time he claims he spent analyzing the case." Id. Petitioner contends that Respondent "merely makes conclusory allegations that the bill 'appears high' and then cites generally to other opinions." Id.

Addressing Dr. Akbari's hourly rate, Petitioner argues that the undersigned "should not base a reasonable fee for Petitioner's expert on what Respondent purportedly pay its own experts." Pet. Reply at 2. Petitioner notes that Dr. Akbari is "a well-regarded, published immunologist whose market rate exceeds $500/hour." Id. And Petitioner identifies that another special master has awarded Dr. Akbari an hourly rate of $550.00. Id. (citing Robertson v. Sec'y of Health & Hum. Servs., No. 18-0554V, 2024 WL 1599577 (Fed. Cl. Spec. Mstr. Mar. 18, 2024)).

## II.    DISCUSSION

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. § 15(e)(1). When compensation is not awarded, the special master "may" award reasonable fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. If a special master has not yet determined entitlement, she may still award attorneys' fees and costs on an interim basis. Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008). Such awards "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." Id. Similarly, it is proper for a special master to award interim fees

and costs "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim." Shaw v. Sec'y of Health & Hum. Servs., 609 F.3d 1372, 1375 (Fed. Cir. 2010).

The claim appears at this point to have been brought in good faith and built on a reasonable basis. Moreover, the undersigned finds that an award of interim attorneys' fees and costs is appropriate here where there are significant attorney and expert fees to be paid.

### A.    Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." Raymo v. Sec'y of Health & Hum. Servs., 129 Fed. Cl. 691, 703 (2016).

Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by Respondent and without providing Petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Saxton, 3 F.3d at 1522.

A special master need not engage in a line-by-line analysis of Petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729(Fed. Cl. 2011). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Wasson v. Sec'y of Health & Hum. Servs., 24 Cl. Ct. 482, 484 (Fed. Cl. Nov. 19, 1991), rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521.

### 1.    Hourly Rates

Here, Petitioner requests the following hourly rates for the attorneys, paralegals, and legal assistants who worked on this matter:

**Sean Greenwood – Attorney**
    2023: $495.00
    2024: $545.00

**Anna Carruth – Attorney**
    2021: $180.00

**Janell Ochoa – Attorney**
    2021: $180
    2022-2023: $200.00

**Paralegals and Legal Assistants**
    2021-2025: $161.00-$185.00

The undersigned finds the requested rates to be reasonable and in accordance with what Mr. Greenwood, Ms. Carruth, Ms. Ochoa, and their firm's paralegals and legal assistants have previously been awarded for their Vaccine Program work.  See, e.g., Alqulissi, 2024 WL 5320024, at *2; Nguyen v. Sec'y of Health & Hum. Servs., No. 21-713V, 2024 WL 3938976, at *2 (Fed. Cl. Spec. Mstr. July 25, 2024); Powell v. Sec'y of Health & Hum. Servs., No. 20-1726V, 2024 WL 1996715, at *2 (Fed. Cl. Spec. Mstr. Apr. 11, 2024); Carre v. Sec'y of Health & Hum. Servs., 20-1613V, 2023 WL 2645840, at *2 (Fed. Cl. Spec. Mstr. Feb. 24, 2023).  The undersigned will therefore award the requested rates.

### 2.    Reduction of Billable Hours

In reducing an award of fees, the goal is to achieve rough justice, and therefore a special master may take into account their overall sense of a case and may use estimates when reducing an award.  See Florence v. Sec'y of Health & Hum. Servs., No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (citing Fox v. Vice, 563 U.S. 826, 838 (2011)).  It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable.  Bell v. Sec'y of Health & Hum. Servs., 18 Cl. Ct. 751, 760 (1989).  Petitioner bears the burden of documenting the fees and costs claimed.

Upon review of the submitted billing records, the undersigned finds the majority of the time billed to be reasonable.  The timesheet entries are sufficiently detailed for an assessment to be made of the entries' reasonableness.  A small reduction, however, is necessary due to time billed for non-compensable administrative tasks (e.g., filing documents, mailing documents, and

compiling and preparing exhibits).[3]  See Pet. Mot., App. B at 1-11.  "Clerical and secretarial tasks should not be billed at all, regardless of who performs them."  Paul v. Sec'y of Health & Hum. Servs., No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023); see also Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates").

This issue has previously been raised with this firm.  See Carre, 2023 WL 2645840, at *2-3; Powell, 2024 WL 1996715, at *2-3; Alqulissi, 2024 WL 5320024, at *2-3.  Therefore, the undersigned finds a reduction of fees by 3% to be reasonable.[4]  See Powell, 2024 WL 1996715, at *3 (reducing fees by 5% due to —in part—billing for noncompensable administrative tasks); Alqulissi, 2024 WL 5320024, at *3 (reducing fees by 3% due to billing for noncompensable administrative tasks among other issues).  This results in a reduction of $610.38.[5]

B.    **Attorneys' Costs**

Petitioner requests $46,450.87 for expenses incurred, including $1,245.87 for miscellaneous costs and $45,205.00 for work performed by Dr. Joseph Jeret and Dr. Omid Akbari.

1.    **Expert Fees**

a.    **Dr. Joseph Jeret**

Petitioner requests $7,750.00 for 15.5 hours of work performed by neurologist Dr. Jeret at a rate of $500.00 per hour.  Pet. Mot., App. C at 3-4.  Dr. Jeret's hourly rate has previously been found reasonable.  See, e.g., Nieves, 2023 WL 7131801, at *4; Bryce v. Sec'y of Health & Hum. Servs., No. 17-1832V, 2023 WL 5666165, at *7 (Fed. Cl. Spec. Mstr. July 18, 2023).  The undersigned finds the requested rate of $500.00 per hour reasonable.  Further, the undersigned finds the time Dr. Jeret spent reviewing medical and case records (4.5 hours); reviewing and incorporating medical literature (6 hours); drafting his initial expert report (1.5 hours); and preparing his rebuttal report (3.5 hours) to be reasonable.  Pet. Mot., App. C at 3.  Accordingly, she will award these costs in full.

b.    **Dr. Omid Akbari**

---

[3] For example, see entries dated October 20, 2023, September 29, 2023, December 11, 2023, December 28, 2023, November 11, 2024, November 12, 2024, March 10, 2025, March 11, 2025, and March 12, 2025.

[4] A special master need not engage in a line-by-line analysis of Petitioner's fee application when reducing fees.  Broekelschen, 102 Fed. Cl. at 729.

[5] $20,346.00 x 0.03 = $610.38.

Case 1:23-vv-01478-UNJ   Document 76   Filed 11/21/25   Page 7 of 10

Petitioner requests $37,455.00 for 68.1 hours of work performed by immunologist Dr. Akbari at a rate of $550.00 per hour.  Pet. Mot., App. C at 1-2, 17-19.

### i.        Hourly Rate

While Dr. Akbari requests an hourly rate of $550.00, the undersigned has consistently awarded Dr. Akbari an hourly rate of $500.00 for his work in the Vaccine Program.  See, e.g., Ray v. Sec'y of Health & Hum. Servs., No. 20-321V, 2025 WL 2780387, at*4 (Fed. Cl. Spec. Mstr. Sept. 5, 2025) (awarding $500.00 per hour); Baker v. Sec'y of Health & Hum. Servs., No. 21-1869V, 2025 WL 1513417, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 29, 2025) (reducing Dr. Akbari's rate from $550.00 to $500.00 per hour); Williams v. Sec'y of Health & Hum. Servs., No. 19-1269V, 2024 WL 1253768, at *3-4 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (same); Carroll ex rel. J.W. v. Sec'y of Health & Hum. Servs., No. 19-1125V, 2023 WL 2771034, at *6 (Fed. Cl. Spec. Mstr. Apr. 4, 2023) (same); see also Bristow v. Sec'y of Health & Hum. Servs., No. 19-457V, 2022 WL 17821111, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (listing cases in which Dr. Akbari has been awarded $500.00 per hour).

In support a higher hourly rate, Petitioner cites to Robertson, where Dr. Akbari was awarded an hourly rate of $550.00 due to his "qualifications and annual inflation."  Pet. Reply at 2; Robertson, 2024 WL 1599577, at *2 n.3.  However, the undersigned has maintained a $500.00 hourly rate in her subsequent cases.  See, e.g., Ray, 2025 WL 2780387, at*4; Baker, 2025 WL 1513417, at *4-5; Santiago v. Sec'y of Health & Hum. Servs., No. 21-1562V, 2024 WL 5321763, at *4 (Fed. Cl. Spec. Mstr. Dec. 18, 2024), mot. for reconsideration denied, No. 21-1562V, 2025 WL 442546 (Fed. Cl. Spec. Mstr. Jan. 13, 2025).  Further, in Ray, decided September 2025, Dr. Akbari requested, and the undersigned awarded, a rate of $500.00 per hour.  Ray, 2025 WL 2780387, at*4.  Petitioner also notes that Dr. Akbari is "a well-regarded, published immunologist whose market rate exceeds $500/hour."  Pet. Reply at 2.  The undersigned finds this argument unpersuasive.  As such, the undersigned finds that $500.00 per hour, as has been consistently awarded to Dr. Akbari, to be an appropriate hourly rate.[6]  This results in a reduction of $3,405.00.[7]

### ii.       Reasonableness of Hours

Dr. Akbari has written two expert reports in this case.[8]  Petitioner has provided invoices showing Dr. Akbari spent 42.5 hours on his first report and 25.6 hours on his second report.  Pet.

---

[6] While the undersigned has previously expressed interested in reconsidering Dr. Akbari's hourly rate, she has declined to do so in recent cases due to Dr. Akbari's excessive billing.  See Baker, 2025 WL 1513417, at *5 n.8; Santiago, 2024 WL 5321763, at *4 n.9.

[7] ($550.00 - $500.00) x 68.1 hours = $3,405.00.

[8] Following Petitioner's motion for interim fees, Petitioner filed a third report from Dr. Akbari.  Pet. Ex. 119.  A request for reimbursement for this report was not included in Petitioner's motion for interim fees and costs.

Mot., App. C at 1-2, 17-19.  For the below discussed reasons, the undersigned finds that the hours billed by Dr. Akbari to be excessive.

A significant portion of Dr. Akbari's first expert report—Petitioner's Exhibit 13—has been taken nearly verbatim from an expert report he has authored in a prior case or from medical literature not filed in the case.  The first seven pages of the report discuss Dr. Akbari's background and provide a medical chronology specific to this case.  Approximately 16 of the next 17 pages of the report are copied nearly verbatim from Dr. Akbari's expert report in Nieves, Mitani and Haneuse,[9] or Segal and Shoenfeld.[10]  See Nieves, 2023 WL 7131801; see also Resp. Response, App. at 3, 4-5.  Dr. Akbari has performed minor updates and edits to his report in the present case such as changing the names from "Mr. Nieves" to "Ms. Bettinger" and updating reference numbers; however, he has not made substantive changes.  Additionally, as Respondent identified in the appendix of his response, in this section of his report, Dr. Akbari copied sentences and paragraphs from 13 different sources without attribution and Dr. Akbari only provided two of these articles as sources for his report.  See Resp. Response, App. at 1-5.  The final page of Dr. Akbari's first report appears to be original work.

Dr. Akbari may rely upon his past work to develop and present a theory in the present case, and Dr. Akbari may include his past work in his present report.  However, it is not reasonable for an expert to bill in full for portions of their reports that were drafted and used in previous cases with only minor updates.  See, e.g., Schauffler v. Sec'y of Health & Hum. Servs., No. 21-0033V, 2024 WL 5375810, at *2 (Fed. Cl. Spec. Mstr. Dec. 30, 2024) ("It is not appropriate to bill fully for [] work either when it is not novel (or only requires minor updating).").  An expert's requested hours should reflect a reduced hourly amount when portions of their report contain previously drafted work.

It is reasonable to reduce the hours of experts when portions of their report have been taken from prior cases.  Gruber ex rel. Gruber v. Sec'y of Health & Hum. Servs., 91 Fed. Cl. 773, 796 (2010) (upholding the special master's reduction of hours for an eight page expert report that included "a one and a half page . . . [that] has appeared, virtually unaltered, in reports . . . in other Vaccine Act cases" and references to "medical literature . . . referenced by [the expert] in many other Vaccine Act cases."); Hayward v. Sec'y of Health & Hum. Servs., No. 16-1539V, 2023 WL 2620613, at *5 (Fed. Cl. Spec. Mstr. Mar. 24, 2023) (reducing time spent on "Report, Writing, and Editing" from 18 hours to two hours when 10 pages of the expert report "appears copied from other material"); see also Guerrero v. Sec'y of Health & Hum. Servs., No. 12-689V, 2014 WL 5335301, at *9-10 (Fed. Cl. Sept. 23, 2014), vacated and remanded on other grounds, 120 Fed. Cl. 474 (2015) (finding the 9.5 hours spent by Dr. Steinman on a 22-page expert report to be excessive when approximately nine pages were copied from a report in a prior case and only six pages were "fresh" work).

---

[9] Aya A. Mitani & Sebastian Haneuse, Small Data Challenges of Studying Rare Diseases, 3 JAMA Netw. Open. e201965 (2020).  Petitioner did not file this article.

[10] Yahel Segal & Yehuda Shoenfeld, Vaccine-Induced Autoimmunity: The Role of Molecular Mimicry and Immune Crossreaction, 15 Cell. & Mol. Immunol. 586 (2018).  Petitioner did not file this article.

Here, Dr. Akbari's invoice states that he spent 42.5 hours on his first report. Pet. Mot., App. C at 17-19. He spent 29.8 hours on studying various immunological concepts and drafting his first report. Id. This is an excessive amount of time to spend reviewing immunological concepts and drafting a report given Dr. Akbari has copied the bulk of his expert report from a previously drafted report and from the medical literature. It is not reasonable for Dr. Akbari to bill over 40 hours for the production of a report that largely contains previously drafted work with only minor updates. And it is not reasonable to compensate Dr. Akbari, in full, for work he has already performed, and been compensated for, in a prior case.

The undersigned also cautions Dr. Akbari against copying and pasting portions of medical literature into his reports without attribution. She has previously declined to compensate experts under similar circumstances. See Raymo v. Sec'y of Health & Hum. Servs., No. 11-654V, 2016 WL 7212323, at *20-21 (Fed. Cl. Spec. Mstr. Nov. 2, 2016), mot. for review denied, 129 Fed. Cl. 691 (2016).

Finally, the undersigned notes that excessive billing is not a new issue for Dr. Akbari. See, e.g., Bristow, 2022 WL 17821111, at *5 (finding that Dr. Akbari spent an "unusually large expenditure of time for a case that has not yet had a hearing" and encouraging him to "endeavor to reduce the number of hours billed henceforth."); Reinhardt v. Sec'y of Health & Hum. Servs., No. 17-1257V, 2021 WL 2373818, at *4 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (finding Dr. Akbari's billing to be "well in excess of the time spent by other experts in cases of comparable complexity"). The undersigned and other special masters have repeatedly warned Dr. Akbari against the practice of excessive billing and accordingly reduced his awarded fees. See, e.g., Pek v. Sec'y of Health & Hum. Servs., No. 16-0736V, 2020 WL 6437774, at *4 (Fed. Cl. Spec. Mstr. Sept. 16, 2020) (reducing Dr. Akbari's award by 50% due to excessive billing); Baker, 2025 WL 1513417, at *5 (Fed. Cl. Apr. 29, 2025) (reducing Dr. Akbari's award by 20%); Nieves, 2023 WL 7131801, at *5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023) (same); Reinhardt, 2021 WL 2373818, at *4 (same); Ray, 2025 WL 2780387, at *5 ("The undersigned finds a reduction of 10% of Dr. Akbari's bill reasonable and necessary due to the excessiveness of his billed hours.").

Given Dr. Akbari's excessive billing in the present case, and the other concerns identified herein, the undersigned finds it appropriate to reduce Dr. Akbari's award by 50%. This results in a further reduction of $17,025.00.[11]

## 2.    Miscellaneous Costs

Petitioner requests $1,245.87 for obtaining medical records, postage, and for the filing fee. Petitioner has generally provided adequate documentation supporting these costs. Pet. Mot., App. C at 5-40. Accordingly, the undesigned will award these costs in full.

---

[11] ($37,455.00 - $3,405.00) x 0.5 = $17,025.00.

## III.   CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate Petitioner and his attorney as follows:

| | |
|---|---|
| Requested Attorneys' Fees: | $20,346.00 |
| Reduction of Attorneys' Fees: | - $610.38 |
| Awarded Attorneys' Fees: | $19,735.62 |
| | |
| Requested Attorneys' Costs: | $46,450.87 |
| Reduction of Attorneys' Costs: | - $20,430.00 |
| Awarded Attorneys' Costs: | $26,020.87 |
| | |
| **Total Interim Attorneys' Fees and Costs:** | **$45,756.49** |

**Accordingly, the undersigned awards:**

**Petitioner is awarded interim attorneys' fees and costs in the total amount of $45,756.49 to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[12]

**IT IS SO ORDERED.**

**/s/ Nora Beth Dorsey**
Nora Beth Dorsey
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.